UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

DENNIS FLORER,

Plaintiff,

v.

STEVE BLAKEMAN, JERRY McHAFFIE, and C/O WEED,

Defendants.

NO. C10-5544 BHS/KLS

REPORT AND RECOMMENDATION
**Noted For: June 17, 2011**

Before the Court is Defendants' Motion for Summary Judgment and Motion to Stay Discovery. ECF No. 13. Defendants' motion to stay was granted under separate Order. ECF No. 17. Having carefully reviewed the motion, Plaintiff's opposition (ECF No. 19), the parties' supporting declarations, and balance of the record, and viewing the evidence in the light most favorable to Plaintiff, the undersigned recommends that the Defendants' motion for summary judgment be granted.

**SUMMARY OF CASE**

In October 2007 Plaintiff Dennis Florer was housed in the Intensive Management Unit (IMU) of the Clallam Bay Corrections Center (CBCC). ECF No. 5. He alleges that Defendants Steven P. Blakeman (a Correctional Unit Supervisor assigned to the CBCC IMU), Jerry D. McHaffie (a Correctional Sergeant assigned to the CBCC IMU) and Steven Weed (a

REPORT AND RECOMMENDATION - 1

1  Corrections Officer assigned to the CBCC IMU) confiscated his religious materials,

2  specifically a book entitled "To be a Jew," in violation of his First Amendment rights and his

3  rights under the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. §

4  2000cc to 2000dd-1.  He also alleges that in November 2008, while again housed in the IMU,

5

6  Defendant Blakeman violated his First Amendment rights and his rights under RLUIPA when

7  Defendant Blakeman refused to allow Plaintiff to keep possession of his Jewish religious texts,

8  which Plaintiff had retrieved from his packed personal property.

9        Plaintiff requests that the Court grant injunctive and permanent relief, compensatory,

10  nominal and punitive damages, and declaratory relief.  *Id.*  Defendants move for summary

11  judgment on Plaintiff's claims, arguing that Plaintiff has failed to state a claim under the First

12

13  Amendment and RLUIPA, that Defendants cannot be held liable for monetary damages in their

14  official capacity, and that Defendants are entitled to qualified immunity.

15                            **STATEMENT OF MATERIAL FACTS**

16  **A.**     **Plaintiff's Religious Belief**

17        It is undisputed that Plaintiff holds a sincere belief in Judaism.  ECF No. 19-1, p. 2

18  (Declaration of D. Florer).  When Plaintiff is in IMU he has no access to Jewish religious

19  services and he asserts that the only way he can practice Judaism is to read the three books at

20  issue in this case.  *Id.*, p. 2.

21

22        In December 2004, while he was housed at the CBCC IMU, he requested Jewish

23  religious materials from the CBCC Chaplain Duncan.  The Chaplain provided Plaintiff with

24  copies of the Holy Scriptures and Aleph Institute Handbook on Learning and Mitzvah

25

26  REPORT AND RECOMMENDATION - 2

(AIHLM).  *Id.*, p. 3.  In September 2007, while he was again housed at the CBCC IMU, Plaintiff requested Jewish religious materials from Chaplain Duncan.  Chaplain Duncan provided Plaintiff with the book titled "To Be A Jew."  *Id.*, p. 4.  In both cases, Chaplain Duncan gave the requested materials to the IMU Property Guard, who in turn, gave them to Plaintiff in the IMU.  *Id.*

According to Plaintiff, the Holy Scriptures consist of the Torah, Jewish Prophets and Jewish writings including Psalms called Tehillim, and these are all contained in a single book called the Tanakh.  The Tanakh is mandated for daily reading and prayer, Sabbath reading and prayer and Biblical and Rabbinical reading and prayer.  *Id.*, p. 7.  The AIHLM covers the basic principles of Jewish religious practice.  *Id.*  The book "To Be a Jew" by Rabbi Hayim Halery Donin is an in-depth instructional observance for the practice of Judaism, specifically covering Halakah, which is the "overall term" for Jewish law.  *Id.*, p. 6.

**B.    CBCC IMU**

Defendant McHaffie supervises corrections and custody officers, ensures that staff adhere to policies governing the IMU, monitors offender movement, and handles emergencies.  ECF No. 13-1, p. 2, Exh. 1 (Declaration of Jerry D. McHaffie).  Offenders housed in the CBCC IMU require a heightened degree of security and supervision.  The IMU population includes offenders with chronic behavioral problems, offenders who pose a serious threat to safety of staff or fellow offenders through a pattern of violent or seriously disruptive behavior, offenders who are considered an escape risk, offenders who require extreme protection needs or offenders who have been sentenced to the death penalty.  *Id.*, pp. 2-1.  DOC Policy 320.255

REPORT AND RECOMMENDATION - 3

governs IMU operations by regulating such matters as IMU offender activities, purchases and property. *Id.* at Attach. A (DOC Policy 320.255). In addition to the policy, "CBCC has an offender handbook which assists operations in the CBCC IMU." *Id.*, p. 3, Attach. B (CBCC Offender Handbook).[1] Policy 320.255 lists the property that is authorized in an IMU unit (based on space availability and program management) as follows:

1. One box, 10" x 12" x 18", of legal documents/papers.

2. Prescription eyeglasses.

3. Telephone/address book.

4. One small religious medallion, 2" in size without sharp edges, worn on a piece of string or thread.

5. One wedding band without diamond, stones, or a raised surface that poses a security concern.

6. Religious material authorized by DOC 560.210 Religious Freedom for Offenders, if requested by the offender and approved by Custody and Religious Program staff.

7. Approved educational, religious, and/or self help material.

8. Books, photographs, and publications.

DOC 320.255 II.A.(1-8).

The IMU Offender Guide also states that only certain property will be allowed in the IMU (after it is searched by the property officer), including a "Bible, Koran, Kifis, Yarmukes,

---

[1] Copies of DOC policies attached to Defendant McHaffie's Declaration are the versions which would have been in effect during the times alleged in the complaint in October 2007 and November 2008.

REPORT AND RECOMMENDATION - 4

or other religious material as available through the chapel, if requested and approved." ECF No. 13-1, p. 32.

Offenders housed in the IMU may also obtain religious materials from the chapel or receive them through approved vendors. ECF No. 13-1, Exh. 1 (Decl. of McHaffie), p. 4, Attach. D (DOC Policy 560.200 Religious Freedom).

While housed in the IMU, offenders' access to personal property is very restricted. ECF No. 13-1, Exh. 2, p. 92 (Declaration of Steven P. Blakeman). Property access is limited to identified legal work, only if the offender has a confirmed court date within 45 days of placement. *Id.* The IMU property matrix restricts the amount of property an offender can retain. When an offender enters the IMU, they are searched, given fresh clothing and issued new hygiene items. The only items the offender retains upon his transfer to the IMU are his eye glasses and personal address/phone book, after inspection by the intake officer. *Id.* The IMU also maintains a self-contained library to avoid items coming in and out of the IMU that would require inspection. *Id.*

**B.     Search of Plaintiff's Cell**

Pursuant to DOC Policy 420.320 Searches of Facilities, cell searches may be conducted at anytime and without notice. ECF No. 13-1, Exh. 1 (Decl. of McHaffie), p. 3, Attach. C (DOC Policy 420.320). Policy 420.320 also requires that discovered contraband be removed from an offender's cell. According to Sergeant McHaffie, offenders' property may be confiscated if it is not authorized for retention, was received from an unauthorized source, has

REPORT AND RECOMMENDATION - 5

1 been altered from its original condition or it is not being used as it was functionally intended.

2 *Id.*, Exh. 1, p. 3 (Decl. of McHaffie).

3    On October 3, 2007, a random search was conducted of the Plaintiff's cell. According

4 to Sergeant McHaffie, the search revealed a "homemade book which appeared to be tied up

5 from pieces of string from bedding." ECF No. 13-1, Exh. 1, p. 4 (Decl. of McHaffie). The

6 book was confiscated by Defendant Weed and turned over to Defendant McHaffie. ECF No.

7 19-1, p. 4 (Decl. of Florer). According to Sergeant McHaffie, the item was not considered to

8 be an approved item pursuant to DOC Policy 320.255 as it had not been authorized and it had

9 been altered. The item was confiscated and then discarded. ECF No. 13-1, Exh. 1, p. 4 (Decl.

10 of McHaffie). Sergeant McHaffie states that the item was not removed from Plaintiff's cell

11 based on its religious nature, but because it was self-prepared and was considered

12 miscellaneous contraband. *Id.*

13    Plaintiff filed a grievance, complaining of Defendant McHaffie's confiscation of the

14 book, "To Be a Jew." According to Plaintiff, Defendant Blakeman told him that the

15 confiscated material was not "allowed at this IMU, there are bibles in every cell do you have

16 one in your cell?" ECF No. 19-3, p. 9 (Grievance Log I.D. Number 0723622). In response, he

17 was told that the "book" in question was not actually a book. "Sgt. McHaffie reports that it is a

18 book you made tied up with pieces of string from bedding; thus, as an altered product, it was

19 hot trashed." *Id.* Plaintiff denies that "[he] made the item tied up with string from bedding."

20 ECF No. 19-1, p. 7 (Decl. of Florer).

26 REPORT AND RECOMMENDATION - 6

On February 20, 2010, Plaintiff's Level II Appeal was denied and he was told that "[t]he information gathered through the investigation is that the material in question was found to be altered; per policy all altered items are confiscated and disposed of." *Id.*, p. 10. On March 7, 2008, Plaintiff's Level III Appeal was also denied for the reason that the "item in question was deemed to be contraband because it had been altered." ECF No. 5, p. 6. Plaintiff was advised that he could file a Tort Claim and he could review DOC 120.500, *Tort Claims by Offenders,* for information regarding the tort claims process. *Id.*

Plaintiff asserts that the Defendants failed to comply with DOC 420.320 V.C.(6), which states that "[r]eligious items/objects not registered with the Chaplain will be treated as contraband; however, the Chaplain should be contacted prior to any disposal action to verify that the item/object was not registered." ECF No. 13-1, p. 72 (Decl. of Florer). Plaintiff asserts that the Defendants did not contact the Chaplain before they destroyed Plaintiff's book. ECF No. 19, p. 15.

**D.     Access to Personal Religious Materials**

On November 24, 2008, a CBCC IMU Property Guard let Plaintiff go through approximately 20 boxes of Plaintiff's personal property in the CBCC IMU recreation yard. ECF No. 19-1, p. 5 (Decl. of Florer). There is no evidence before the Court as to the reason why Plaintiff was given access to his packed boxes. Plaintiff chose specific items from his property to bring back to his cell, including the Holy Scriptures and AIHLM. *Id.* Defendant Blakeman stopped Plaintiff and told him that he could not take the religious items back to his cell. *Id.*, p. 6.

REPORT AND RECOMMENDATION - 7

Plaintiff complained of Defendant Blakeman's refusal in a grievance. ECF No. 13-1, p. 98 (Grievance Log Id. No. 0828900) (Declaration of Tamara Rowden). Specifically, Plaintiff requested the Holy Scriptures and AIHLM. *Id*. He also stated that Mr. Blakeman was attempting to convert him from Judaism to Christianity. *Id.* In response, Plaintiff was told that he is authorized to retain items received through approved vendors while housed in the IMU, but is not authorized to receive items from his packed property. He was also told that if he was in need of religious materials, he could request them from the chapel or approved vendors. *Id.* Plaintiff's Level II appeal was denied, with the following response:

> Chaplain Duncan was assigned to investigate this Level II grievance. During the investigation Chaplain Duncan interviewed CUS Blakeman and you. Your accusation that CUS Blakeman attempted to convert you and require your attendance of bible study could not be validated. With regard to requesting materials from your packed property, as noted in Level 1, retrieving items from packed property (other than legal materials) is still not authorized and therefore you cannot retain them in IMU. As suggested in the Level 1 response you are entitled to request items from the chapel or receive them from approved vendors.

*Id.*, p. 100.

In his Level III Appeal of this grievance, Plaintiff was told the following:

> I reviewed your initial grievance as well as all appeals and responses. DOC Religious Program Manager, Greg Garringer, also reviewed this grievance and provided this response:
> I have received and read your Level I and Level II grievances and the responses as well as your Level III appeal. While in IMU you could not have your packed property, it is not allowed. The allegations made against CUS Blakeman were not substantiated. I concur with the responses given by facility staff. Please work with facility Chaplain to help meet your religious needs.

REPORT AND RECOMMENDATION - 8

*Id.*, p. 102. [2]

## DISCUSSION

**A. First Amendment and RLUIPA**

Plaintiff brings his civil rights claims under the First Amendment Free Exercise Clause of the United States Constitution and the Religious Land Use and Institutionalize Persons Act, 42 U.S.C. § 2000cc to 2000dd-1 (RLUIPA). In some ways the analyses of a First Amendment Free Exercise claim and one under RLUIPA, mirror one another, but RLUIPA mandates a stricter standard of review for prison regulations. *Shakur v. Schriro*, 514 F.3d 878, 888 (9th Cir.2008). RLUIPA provides for the strict scrutiny of a religious infringement, while the First Amendment merely requires a rational basis analysis. *See Cutter v. Wilkinson*, 544 U.S. 709, 125 S.Ct. 2113, 161 L.Ed.2d 1020 (2005); *Henderson v. Terhune*, 379 F.3d 709, 715 n. 1 (9th Cir.2004).

The First Amendment to the United States Constitution states in pertinent part, "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof...." In order for a religious claim to merit protection under this clause, the claim must first meet two criteria: (1) the proffered belief must be sincerely held; and (2) "the claim must be rooted in religious belief, not in 'purely secular' philosophical concerns." *Callahan v. Woods*, 658 F.2d 679, 683 (9th Cir.1981). That is, "whether the plaintiff's claim is related to his sincerely held religious belief." *Malik v. Brown*, 16 F.3d 330, 333 (9th Cir.1994);

---

[2]Copies of this initial grievance and Level II appeal are also attached to Plaintiff's Declaration. ECF No. 19-1, Attach. E, pp. 12 and 13. Reference is made to the copies attached to Tamara Rowden's declaration because the copies are more legible.

REPORT AND RECOMMENDATION - 9

see also *Shakur v. Schriro*, 514 F.3d 878 (9th Cir.2008). If a regulation infringes on a "sincerely held religious belief" it is only valid if it is "reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987).

> Similarly, RLUIPA provides in relevant part:
>
> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution ... even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person
>
> (1) is in furtherance of a compelling governmental interest; and
>
> (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1(a). To establish a RLUIPA violation, the plaintiff bears the initial burden to prove the defendants' conduct places a "substantial burden" on his "religious exercise." *Warsoldier v. Woodford*, 418 F.3d 989, 994 (9th Cir.2005). Once the plaintiff establishes a substantial burden, defendants must prove the burden both furthers a compelling governmental interest and is the least restrictive means of achieving that interest. *Id*. at 995. RLUIPA is "to be construed broadly in favor of protecting an inmate' right to exercise his religious beliefs." *Warsoldier*, 418 F.3d at 995 (citing 42 U.S.C. § 2000cc-3(g)).

Defendants argue that the applicable DOC policies have not placed a substantial burden on Plaintiff because he always had the ability to obtain his religious materials through the chaplain or an approved vendor. Defendants also argue that even if Plaintiff's ability to exercise his religion was substantially burdened, the policies are reasonably related to

REPORT AND RECOMMENDATION - 10

legitimate penological interests and are the least restrictive policies necessary to further those compelling penological interests.  Plaintiff does not dispute Defendants' claim of a legitimate penological interest, but argues that Defendants did not comply with applicable policies.

**Substantial Burden/Infringement**

RLUIPA defines "religious exercise" as "'any exercise of religion, whether or not compelled by, or central to, a system of religious belief.'" *Warsoldier v. Woodford*, 418 F.3d 989, 994 (9th Cir.2005) (quoting 42 U.S.C. § 2000cc-2(a)).  To merit protection under the First Amendment, a religious claim must be sincerely held and must be "rooted in religious belief, not in 'purely secular' philosophical concerns." *Malik v. Brown*, 16 F.3d 330, 333 (9th Cir.1994) (internal citations omitted); *Shakur*, 514 F.3d at 885 (9th Cir.2008). The issue is whether the plaintiff "sincerely" believes the religious practice is consistent with his faith. *Shakur*, 514 F.3d at 885.

Both RLUIPA and the First Amendment "bar[s] inquiry into whether a particular belief or practice is 'central' to a prisoner's religion." *Cutter v. Wilkenson*, 544 U.S. 709, 725, n. 13, 125 S.Ct. 2113, 161 L.Ed.2d 1020 (2005) (RLUIPA); *Hernandez v. C.I.R.*, 490 U.S. 680, 699, 109 S.Ct. 2136, 104 L.Ed.2d 766 (1989) ("[i]t is not within the judicial ken to question the centrality of particular beliefs or practices to a faith, or the validity of particular litigants' interpretations of those creeds.") (First Amendment).

For purposes of this summary judgment motion, Defendants do not contest that the use of the books at issue here is an exercise of religion.  DOC's Religious Property Matrix (DOC 560.200) lists a prayer book, the Tehillim, and Torah as allowable personal property.  ECF No.

REPORT AND RECOMMENDATION - 11

19-2, p. 30. Plaintiff states that the allowable religious items listed on the matrix are analogous to his Holy Scriptures, AIHLM, and the book, "To Be A Jew." ECF No. 19, p. 4. DOC Policy 320.255 II.A.(6) and the IMU Offender Guide list religious materials authorized by DOC 560.200, if requested by the offender and approved by Custody and Religious Program staff, as property that is allowed in an IMU cell. ECF No. 13-1, pp. 9, 32. It is not disputed that Plaintiff received the books from Chaplain Duncan. ECF No. 19-1, pp. 2-4. There is also no dispute that Plaintiff holds a sincere belief in Judaism. *Id.*, p. 2 (Decl. of Florer).

RLUIPA then requires Plaintiff to demonstrate that the prison's policies or actions constitute a substantial burden on the exercise of his religious beliefs. *Warsoldier*, 418 F.3d at 994. The Ninth Circuit defines substantial burden as one that is "'oppressive' to a 'significantly great' extent. That is, a 'substantial burden, on 'religious exercise' must impose a significantly great restriction or onus upon such exercise." *Warsoldier*, 418 F.3d at 995 (*quoting San Jose Christian Coll. v. City of Morgan Hill*, 360 F.3d 1024, 1034 (9th Cir.2004)). The burden must prevent the plaintiff "from engaging in [religious] conduct or having a religious experience." *Navajo Nation*, 535 F.3d 1058, 1092 (9th Cir.2008) (internal citations omitted).

Plaintiff states that while he is housed in the IMU, he has no access to Jewish religious services and that his only means to practice Judaism is through reading the religious texts at issue. ECF No. 19-1, p. 2 (Decl. of Florer). These texts contained instructional observance of the practices of Judaism and/or were mandated for daily reading and prayer. ECF No. 19-1, pp. 6-7.

REPORT AND RECOMMENDATION - 12

Defendants contend that Plaintiff's right to practice his religion was not infringed because he was not prohibited from possessing religious items so long as he requested the materials from the chaplain or other approved vendors. They also contend that, pursuant to DOC policies, Plaintiff had no right to possess an altered book (considered contraband) and that he was appropriately denied access to his packed personal property except to obtain identified legal paperwork if he had a confirmed court date. ECF No. 13-1, p. 93, Exh. 1 (Decl. of Blakeman).

Whether the book "To Be a Jew" was properly considered as contraband is in dispute. ECF No. 19-1, pp. 6-7. It is undisputed that Plaintiff received the book from the CBCC Chaplain in September 2007, while Plaintiff was in the CBCC IMU. ECF No. 19-1, p. 2. In October 2007, Defendants confiscated the book, which Defendants claim was altered, and by the time Plaintiff filed his initial grievance, the book had been destroyed. ECF No. 19-3, p. 9. There is nothing in the record to indicate that the Defendants consulted with the Chaplain before they destroyed the book. Plaintiff claims that this failure is a violation of DOC 420.320V.C.(6), which states that "[r]eligious items/objects not registered with the Chaplain will be treated as contraband; however, the Chaplain should be contacted prior to any disposal action to verify that the item/object was not registered." ECF No. 19, p. 15; DOC 420.320 V.C.(6). It is not clear whether this policy applies to these facts.

While it is undisputed that Plaintiff was given access to his packed materials on November 24, 2008, it is not known why Plaintiff was given access. He retrieved, but was denied permission to retain, the Holy Scriptures and AIHLM that he had previously received

REPORT AND RECOMMENDATION - 13

from Chaplain Duncan in the CBCC IMU in 2004. ECF No. 19-1, p. 2. There is no evidence that these items did not meet DOC security requirements. It is also not known how long Plaintiff had been in IMU prior to the November 24, 2008 date.

While it is unclear that reading "To Be A Jew" is central to the practice of Judaism, for purposes of this summary judgment motion only, the Court will assume that it is. However, at the time the book "To Be A Jew" was confiscated in October 2007, the record reflects that Plaintiff had already received the Holy Scriptures and Aleph from Chaplain Duncan in December 2004. Thus, it is unclear how his ability to practice his religion was substantially burdened with the confiscation of the book "To Be A Jew," when he had these religious materials. Even if the book "To Be A Jew" was the only item he had with him in the CBCC IMU in October 2007, Plaintiff was not denied access to religious materials as he could have always requested them from the CBCC Chaplain or an approved vendor. It is clear that Plaintiff was aware that he could do so as he had done so in the past. In fact, Plaintiff had requested and obtained all of the materials at issue here -- "To Be A Jew," the Holy Scriptures, and the Aleph -- from Chaplain Duncan during times that Plaintiff was housed in the CBCC IMU.

As noted above, it is not known how long Plaintiff was in IMU prior to November 24, 2008, when his request to retrieve the Holy Scriptures and Aleph from his packed personal property was denied. However, it is undisputed that he always had the opportunity to request religious materials from Chaplain Duncan and/or an approved vendor and that the materials would be provided to him. Thus, the Court must ask whether preventing him from taking

REPORT AND RECOMMENDATION - 14

religious materials from his personal property substantially burdened the practice of his religion when Plaintiff was without these religious materials before November 24, 2008, he knew that he could request the materials from Chaplain Duncan or purchase them through an approved vendor, and he had previously obtained these same religious texts from Chaplain Duncan.

Viewing these facts in the light most favorable to Plaintiff, the undersigned concludes that Plaintiff has not met his burden of showing a substantial burden or infringement on his ability to practice his religion. Plaintiff does not dispute that alternative means were available to him or that they were not sufficient. In fact, there is nothing in the record to suggest that Plaintiff ever pursued the alternative means provided to him by DOC policy.

Accordingly, Defendants are entitled to summary judgment on these claims.

**B.      Individual Liability Damages and Qualified Immunity Under RLUIPA**

Defendants also argue that they cannot be held liable for monetary damages in their official capacities and that they are entitled to qualified immunity. Because the Court finds that Plaintiff has failed to raise a genuine issue of material fact that his constitutional rights have been violated, these issues need not be addressed.

## CONCLUSION

The undersigned recommends that Defendants' motion for summary judgment (ECF No. 13) be **GRANTED.**

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written

REPORT AND RECOMMENDATION - 15

objections.  See also Fed. R. Civ. P. 6.  Failure to file objections will result in a waiver of those objections for purposes of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985).  Accommodating the time limit imposed by Rule 72(b), the Clerk is directed to set the matter for consideration on **June 17, 2011**, as noted in the caption.

    **DATED** this  31st  day of May, 2011.

                                    Karen L. Strombom
                                      United States Magistrate Judge

REPORT AND RECOMMENDATION - 16